UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re : Chapter 13

CATHERINE A. OSCAR :

    Debtor : Bankruptcy No. 04-18900F

..................................................

MEMORANDUM

..................................................

    Two contested matters are presently before me in this chapter 13 bankruptcy case. First, the debtor seeks confirmation of her proposed second amended plan, filed on June 3, 2005. The standing chapter 13 trustee, William C. Miller, Esquire, opposes confirmation. Second, the trustee seeks dismissal of this bankruptcy case. The debtor opposes dismissal. The parties have submitted supporting memoranda.[1]

    An evidentiary hearing was held and the following facts were proven.

I.

    On June 30, 2004, the debtor filed a voluntary petition in bankruptcy under chapter 13. At the time of her bankruptcy filing, and presently, the debtor was married to Alvin Oscar, and they both lived with their nine adopted children, whose ages ranged from 2 to 16, at their home at 111 Clayton Court, North Wales, Pennsylvania. Ex. T-2.

---

[1] However, the trustee's memorandum only addresses his opposition to confirmation and makes no mention of dismissal.

Mrs. Oscar was then employed as a physician's assistant earning a monthly net income of $810. Mr. Oscar, a former physician, was ill and unemployed.

Both Mr. and Mrs. Oscar receive social security benefits, and the debtor reported on bankruptcy Schedule I that the total monthly income for her family of 11 was $3,676, inclusive of her husband's benefits. Ex. T-2. The debtor also disclosed on Schedule J that her family monthly expenses averaged $3,666. These expenses did not include any rent or home mortgage payments, but did include payments of $200 per month for a car loan. Ex. T-1.

At the hearing on these contested matters, the debtor testified that she is no longer employed, but that her husband is working part-time at a weight-loss clinic. He earned at the time of the hearing about $1,000 per week before any deductions; however, Mr. Oscar testified that he anticipated his earnings would be reduced in the fall of 2005 to $500 per week. Thus, he was seeking other employment. Given his age and medical condition (among other ailments, he has suffered considerable hearing loss and had trouble responding to questions posed to him in court), he has found the job search difficult.

Whether or not Mr. Oscar obtains future employment, the debtor conceded that she could not afford to tender regular monthly mortgage payments to the first mortgage holder, Bank One N.A., as those payments exceeded $3,000. Moreover, her prepetition mortgage delinquency approximates $60,000. She and her husband believed that, assuming Mr. Oscar earned $4,000 per month, and the mortgagee modified their mortgage agreement, they could afford to pay approximately $1,500 per month prospectively. At the present time, however, they are tendering no payments to Bank

One. Moreover, as of the confirmation hearing, the debtor had been unable to save any money, as she had paid delinquent utility bills, and purchased clothing and paid for medical expenses for her children.

Perhaps to encourage Bank One to agree to modify the mortgage agreement, the debtor commenced litigation against Bank One. Ex. D-2. In her complaint, the debtor asserts that the mortgage lien held by Bank One is invalid because the original loan agreement contained material violations of the federal Truth in Lending Act, 15 U.S.C. §§ 1601, et seq., and she has attempted to rescind this loan. Bank One has answered the complaint and contends that its lien is valid and the debtor's purported rescission is improper; indeed, it has filed a secured proof of claim in the amount of $502,952.36. Ex. T-3. The Bank One litigation is still pending.[2]

The plan that the debtor now seeks to confirm is dated June 3, 2005. Ex. D-1. It provides that the debtor will pay $10 per month for 60 months to the chapter 13 trustee, for a total of only $600. From these payments, the plan calls for the trustee to make distribution first to administrative claimants (viz. debtor's counsel fees of $500) and "then to any allowed arrears of the Class Three claimant." Id. at ¶ 7. The sole class three claimant is Bank One. Id., ¶ 6(C). The plan also states that "[t]he Debtor now opts not to

---

[2]In addition to this pending adversary proceeding, the debtor, in a separate contested matter, challenged the right of Bank One to amend a proof of claim filed on its behalf by the debtor. (The debtor's proof of claim on behalf of the mortgagee stated that there was no debt owed.) I previously rejected the debtor's challenge by an order dated April 14, 2005, which order is presently on appeal. My colleague, Judge Stephen Raslavich, has rejected an identical argument raised by debtor's counsel in a different chapter 13 case: In re Kevin Richardson, slip op. Bankr. No. 04-33234 (May 18, 2005).
On August 3, 2004, the debtor also commenced an adversary proceeding against WMC Mortgage Corporation, alleging that this creditor held a voidable second lien on her home. She prevailed by default.

treat the alleged secured claim of the Bank in her plan." Id., ¶ 4.[3]  Finally, the proposed plan provides that the "secured claims of local taxing authorities . . . will be paid directly by arrangements made with those creditors outside of the plan." Id., ¶ 6(D).  The Montgomery County Tax Claim Bureau has filed a secured proof of claim in the amount of $5,489.85.  Ex. T-3.

II.

The trustee raises numerous objections to confirmation, most of which are related to the debtor's pending litigation with Bank One and her proposed treatment of that creditor's secured claim.

First, the trustee argues that if Bank One were found to hold an allowed secured claim consistent with the amount stated in its proof of claim, then the proposed plan is not viable as required by section 1325(a)(6), in that the debtor does not provide for that claim; thus, Bank One will be entitled to relief from the bankruptcy stay and the debtor and her family will soon be ejected from their home.  Their ejectment would give rise to considerable expenses that would likely prevent the successful completion of her plan.

Second, the trustee contends that if the debtor were successful in her rescission litigation against Bank One, and if the mortgagee's claim were allowed solely as an unsecured claim, then this very large unsecured claim would render the debtor

---

[3]The proposed plan also provides for payments of $200 per month to a creditor holding a lien upon an automobile. Ex. D-1, ¶ 5.

ineligible for chapter 13 relief under section 109(e). Third, the trustee maintains that if the debtor were successful in her litigation against Bank One, and if the mortgagee's allowed claim were fixed at zero, then the debtor would own largely unencumbered real estate worth more than $300,000; in that circumstance, since unsecured creditors are not repaid in full, the debtor's proposed plan violates section 1325(a)(4). Fourth, the trustee asserts that the debtor's proposed plan is not "fair and equitable" in that the debtor intends to remain in the realty pending the outcome of her litigation with Bank One without tendering any payments. Section 1325(a)(3) requires that chapter 13 plans be proposed in good faith. And finally, after hearing the testimony offered at the confirmation hearing, the trustee contends that the debtor's proposed plan violates section 1322(a)(1), in that the debtor is not committing all present income to her reorganization effort.

A.

The debtor complains that the trustee's objections were made orally and thus cannot be considered. Local Bankr. Rule 3015-1(c) states that:

> an objection to confirmation of a debtor's . . . chapter 13 plan
> . . . shall be filed and served on the debtor, the debtor's
> counsel, the trustee, and the United States trustee no later than
> five (5) days before the date of the hearing on confirmation of
> the plan . . ., <u>unless the court otherwise permits</u>.

(emphasis added).

In this instance, the chapter 13 trustee had filed and served upon the debtor his motion to dismiss this case, which service was made many months prior to the confirmation hearing. This motion complained that the debtor's then-proposed plan did

5

not provide for the secured proofs of claims filed, which is one of the trustee's current confirmation objections. Furthermore, the trustee orally stated his objections to confirmation in open court, with debtor's counsel present, more than one week prior to the actual confirmation hearing. Indeed, I postponed the confirmation hearing until 10 days after the trustee's oral objections were made in order to afford the debtor ample time to consider those objections and present any evidence necessary to meet them.

Under these circumstances, I conclude that the debtor had adequate notice of the trustee's opposition to confirmation and his reasons for that opposition. Cf. United States v. Vulpis, 807 F. Supp. 284, 287 (S.D.N.Y. 1991) (adequate notice of criminal contempt was provided by statements made in open court). Moreover, these circumstances also warrant the exercise of my discretion to waive the written objection requirement of the local rule. See Matter of Mesta Machine Co., 30 B.R. 178, 181 (Bankr. W.D. Pa. 1983) ("[I]t is a well settled principle that a Court may waive its own local rules for good cause."); Matter of Canipe, 20 B.R. 81 (Bankr. W.D.N.C. 1982) (court waives deadline established in the local rules for filing objections to confirmation).[4]

---

[4]As will also be discussed, absent a recommendation from the trustee that a plan be confirmed, a chapter 13 debtor has the burden of persuasion at a confirmation hearing. For this reason, and knowing in advance that the trustee was not intending to recommend confirmation of her plan, the debtor should have been prepared to demonstrate that her proposed reorganization plan met all statutory requirements.

Moreover, to the extent that the debtor was unprepared to address the objection raised by the trustee under section 1322(a)(1), which objection was only raised after the evidentiary record was concluded, that additional objection has been rendered superfluous, given that the record supports the trustee's other confirmation challenges.

B.

The Bankruptcy Code identifies the requirements for approval of a chapter 13 plan. Certain requirements are set forth in section 1322:

> (a) The plan shall—
> (1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;
>
> (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim; and
>
> (3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

11 U.S.C. § 1322(a). As noted earlier, the trustee maintains in this dispute that the debtors' proposed amended plan does not comply with section 1322(a)(1), because after the bankruptcy case commenced, the debtor's spouse became employed and his earnings (above what the debtor previously earned) are not committed to the reorganization process.

In addition, section 1325 provides:

> (a) Except as provided in subsection (b), the court shall confirm a plan if—
>
> (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
>
> (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
>
> (3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan–

    (A) the holder of such claim has accepted the plan;

    (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

    (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

    (C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--

    (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

    (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended--

    (A) for the maintenance or support of the debtor or a dependent of the debtor, including charitable contributions (that meet the definition

> of "charitable contribution" under section
> 548(d)(3)) to a qualified religious or charitable
> entity or organization (as that term is defined in
> section 548(d)(4)) in an amount not to exceed
> 15 percent of the gross income of the debtor for
> the year in which the contributions are made;
> and
>
> (B) if the debtor is engaged in business, for the
> payment of expenditures necessary for the
> continuation, preservation, and operation of
> such business.
>
> (c) After confirmation of a plan, the court may order any
> entity from whom the debtor receives income to pay all or any
> part of such income to the trustee.

11 U.S.C. § 1325.

Section 1325(a)(4)'s provision is referred to as the "best interest of creditors test." In essence, a chapter 13 plan must provide unsecured creditors with a dividend at least equal to what those creditors would receive in a chapter 7 liquidation. See generally In re Solomon, 67 F.3d 1128, 1132 (4th Cir. 1995); In re Nevins, 2005 WL 984182, at *4 (Bankr. E.D. Pa. 2005). The provisions of 1325(b) are referred to as the "disposable income test." In general, when a chapter 13 debtor proposes a reorganization plan that does not call for payment in full to her unsecured creditors—as occurs in this case—her plan may not be confirmed over the objection of an unsecured creditor or the chapter 13 trustee unless the debtor's proposed plan calls for payment of her "disposable income" for a three year period. See, e.g., In re Freeman, 86 F.3d 478 (6th Cir. 1996); In re Solomon.

The debtor has the ultimate burden of persuasion that her proposed chapter 13 plan meets the statutory requirements for confirmation. See, e.g., In re Hill, 268 B.R. 548, 552 (B.A.P. 9th Cir. 2001) ("The debtor, as the chapter 13 plan proponent, has the burden of proof on all elements of plan confirmation."); In re Norwood, 178 B.R. 683,

9

687 (Bankr. E.D. Pa. 1995). While this burden is lessened when the chapter 13 trustee recommends confirmation, see In re Hines, 723 F.2d 333 (3d Cir. 1983), the trustee has made no such recommendation in this instance. Where an objection to confirmation is raised under section 1325(b), the initial burden of production falls on the objecting trustee or unsecured creditor to show that the debtor is not applying all of her disposable income to the plan for three years. See, e.g., In re Andreacchio, 2004 WL 2495409, at *2 (Bankr. E.D. Pa. 2004); In re McGilberry, 298 B.R. 258, 260 (Bankr. M.D. Pa. 2003). If that initial burden is satisfied, then the debtor bears the burden of persuasion on the question of disposable income. Id.; see also In re Heath, 182 B.R. 557, 561 (B.A.P. 9th Cir. 1995) (objector has an initial burden of production before the debtor has the ultimate burden of persuasion).

III.

To some extent, the trustee's position in this contested matter has been echoed by my judicial colleague in a recently decided chapter 13 case:

> Before the Court is a Motion to Dismiss the instant Bankruptcy case, as having been filed in bad faith. For the reasons which follow, the Motion will be granted and the case will be dismissed for want of good faith, as well as other good cause.
>
> The present case represents a bankruptcy filing of a type which has become somewhat commonplace. Faced with financial problems, Debtors file a bankruptcy case. Prior thereto they have concluded that in connection with a prepetition mortgage loan transaction a violation of the provisions of one or more consumer protection statutes occurred. After commencement of the bankruptcy case, the Debtors commence an adversary proceeding to assert such

10

> claims, in some instances, such as here, requesting that their remedy, if successful, be the rescission of the loan.
>
> The Court herein in no way means to imply that the above course of action is disfavored, let alone prohibited. On the contrary, it is a permissible course of action which this Court has encountered many times. In these circumstances, however, this Court has consistently made clear that while any such litigation is pending the Debtors, since they may ultimately be unsuccessful on their claims, must make/keep current on payments called for under their Chapter 13 plan, including, without limitation but in particular, postpetition monthly mortgage payments. Any other practice would, of course, be grossly unfair, because if the Debtors fail to make their regular monthly mortgage payments, yet do not prevail in their lawsuit, they will essentially have reserved to themselves in the interim possession of the mortgaged premises at no cost. This Court has thus placed particular emphasis on a debtor's adherence to the foregoing condition i.e., current payments, as a factor to be considered where a request for dismissal of the bankruptcy case is made. The factor is implicated here and, as hereinafter discussed, it militates heavily against the Debtors.

In re Daniels, Bankr. No. 04-11496, slip. op., at 1-2, http://www.paeb.uscourts.gov/ pages/ pubopins (Raslavich. J) (April 25, 2005).

As noted in the quotation, the Daniels decision arose in the context of a motion to dismiss a chapter 13 case brought by the mortgagee. The debtor, in essence, argues in this dispute that Bank One has not objected to her proposed plan and thus any potential unfairness toward Bank One is of no concern to the chapter 13 trustee. This contention, however, overlooks 11 U.S.C. § 1302(b)(2)(C), which grants the trustee the right to appear and be heard at confirmation hearings, as well as the observation made by the Third Circuit Court of Appeals that chapter 13 trustees should independently determine if a proposed plan meets statutory requirements. In re Szostek, 886 F.2d 1405, 1414 (3d Cir. 1989). Thus, I do not find the trustee's current objections outside the broad

scope of his duties. Furthermore, the trustee is correct that the debtor's proposed reorganization plan fails to comply with the various statutory confirmation requirements if one considers the possible outcomes of her litigation with Bank One, save (perhaps) a mutually consensual outcome.

Section 1325(a)(6) requires that visionary or speculative chapter 13 plans not be approved. As stated in In re Fantasia, 211 B.R. 420, 423 (B.A.P. 1st Cir. 1997) (citations omitted):

> To satisfy feasibility, a debtor's plan must have a reasonable likelihood of success, i.e., that it is likely that the debtor will have the necessary resources to make all payments as directed by the plan. 11 U.S.C. § 1325(a)(6). The debtor carries the initial burden of showing that the plan is feasible. Before confirmation, the bankruptcy court should be satisfied that the debtor has the present as well as the future financial capacity to comply with the terms of the plan.

Therefore, the failure of a chapter 13 debtor to propose a plan that addresses likely future contingencies has resulted in a denial of confirmation, based upon a lack of feasibility. See, e.g., In re Goodavage, 41 B.R. 742 (Bankr. E.D. Va. 1984) (failure to provide for likely medical expenses); In re Jones, 10 B.R. 128 (Bankr. E.D. Va. 1981) (confirmation is denied where the court found a budget unrealistic for not including amounts for home maintenance or automobile insurance, and little for recreation or food and clothing); In re Hockaday, 3 B.R. 254 (Bankr. S.D. Cal. 1980) (confirmation is denied where the debtor only budgeted $10 for emergencies); see also In re Smith, 207 B.R. 888, 890 (B.A.P. 9th Cir. 1996) ( "In cases where the debtors have very young or handicapped dependents, the absence of a budget for life insurance may call a Chapter 13 plan into question.").

When litigation is pending as of the time of the confirmation hearing, the likely outcome of that litigation may be considered as part of the debtor's burden to establish the feasibility of her plan. See In re Yeager, 2004 WL 422049, at *3 (Bankr. E.D. Pa. 2004); see also In re Shields, 148 B.R. 783 (Bankr. E.D. Pa. 1993) (chapter 13 plan that is premised upon the debtor's setting aside of a foreclosure sale is not feasible when there is no likelihood that the foreclosure sale will be set aside).

Here, the debtor is enmeshed in litigation with her mortgage holder, Bank One, but her proposed reorganization plan does not address the various contingencies arising from that litigation. While there was no evidence presented by which I could opine as to the merits of the debtor's pending rescission claim, the confirmation process need not await the outcome of that litigation. See generally In re Bell, 314 B.R. 54, 61 n.5 (Bankr. E.D. Pa. 2004) (determination of confirmation should not be delayed by pendency of an adversary proceeding). Indeed, this chapter 13 case has already been pending for more than 14 months.

As written, the debtor's proposed plan implies that she holds no liability to this creditor. That result is extremely unlikely. To the extent it is based upon the amended proof of claim litigation, I have already concluded that Bank One was entitled to file an amended proof of claim, which claim exceeds $500,000. To the extent the plan is premised upon successfully rescinding the Bank One loan, the trustee has cited numerous appellate court decisions holding that a TILA rescission does not entitle the borrower to retain the original loan proceeds and pay the lender nothing. See Trustee's Memorandum, at 6 n.5.

13

But even if the debtor's pending adversary proceeding or proof of claim litigation were to eliminate completely Bank One's claim, then the trustee is correct that her proposed plan would improperly permit the debtor to retain all the equity in her home, valued by her at more than $300,000, without paying unsecured creditors in full, in violation of the best interest of creditors' test.  See In re Wile, 304 B.R. 198, 204 (Bankr. E.D. Pa. 2004).

If the debtor were entitled to rescind the mortgage loan in her pending adversary proceeding, it is highly likely that Bank One would remain a creditor.  See In re Daniels, Bankr. No. 04-11496, slip. op., at 6-7, http://www.paeb.uscourts.gov/ pages/ pubopins.  Judge Raslavich has observed that most courts would permit Bank One to hold a claim for the principal amount of the loan (less payments received).   Id.; see e.g., Quenzer v. Advanta Mortgage Corp. USA, 288 B.R. 884, 888-89 (D. Kan. 2003).  Courts may differ whether rescission by the chapter 13 debtor must be conditioned upon the debtor's tender of the entire outstanding principal amount—Judge Raslavich has held that a tender is required, see id., while Chief Judge Sigmund has permitted this sum to be repaid over the life of the proposed plan.  In re Williams, 291 B.R. 636 (Bankr. E.D. Pa. 2003); see also In re Bell, 314 B.R. at 62.  But the debtor's proposed plan provides for no repayment to Bank One of the rescission amount at all.  This failing renders the debtor's plan non-confirmable.  See In re Williams, 291 B.R. at 662 ("Absent a plan providing for the payment of BankOne's claim as so noted, confirmation will elude this Debtor.").

Furthermore, for purposes of determining confirmation of this proposed plan, I need not now decide that, were rescission granted, Bank One would be entitled to have its rescission claim repaid in full.  If I assume arguendo that this creditor would hold

14

only a general unsecured claim, which claim could be treated as other unsecured claims, denial of confirmation would still be warranted for two reasons. First, because the debtor's plan to pay only $600 would violate the best interest test found in section 1325(a)(4), just mentioned. Second, because the amount of Bank One's unsecured claim likely would exceed the statutory debt ceiling established by section 109(e) for chapter 13 cases.

The debtor contends that these confirmation defects are not germane because her amended plan simply does not provide for Bank One's secured claim. That is, the debtor argues that she will treat Bank One's claim outside the reorganization process, and so the trustee need not be concerned with it. I disagree with this analysis.

First, as noted earlier, the debtor's second amended plan was not carefully drafted. While stating that the debtor "now opts not to treat the alleged secured claim of the Bank in her plan," Ex. D-1, ¶ 5, the plan also calls for the trustee to make distribution to the "allowed arrears of the Class Three claimant" after paying Class One claimants (allowed administrative expenses). Ex. D-1, ¶ 7. Class Three consists solely of the secured claim held by Bank One. Ex. D-1, ¶ 6(C). The debtor offered no evidence that she can afford to repay the allowed arrears, which, in prior litigation, Bank One asserted would exceed $60,000. Therefore, the proposed plan, as written, probably does provide for Bank One's secured claim.

Second, if Bank One will hold an allowed unsecured claim, based upon the outcome of the pending adversary proceeding, or based upon an undersecured status, see 11 U.S.C. § 506(d), the debtor's plan must provide for it as it provides for other

15

unsecured claims.[5]  See 11 U.S.C. § 1322(a)(3).  Thus, to the extent that the debtor's plan did proposed not to treat Bank One's unsecured claim, her plan could not be approved.

Third, if Bank One holds a secured claim, I appreciate that a chapter 13 plan need not provide for that claim.  See 8 Collier on Bankruptcy, ¶ 1325.06[1][b] (15th ed. rev. 2005).  Nonetheless, if a confirmed plan does not provide for a secured claim, generally that secured creditor can easily obtain relief from the bankruptcy stay to exercise its non-bankruptcy law rights to recover its collateral.  See, e.g., In re Vincente, 260 B.R. 354, 357-58 (Bankr. E.D. Pa. 2001); 8 Collier on Bankruptcy, ¶ 1325.06[1][b] at 1325-25.  Were that to occur, the trustee is correct that it is unlikely that the debtor here would be able to complete her proposed plan, as the debtor has maintained that it is essential that she retain ownership of the Clayton Court property.  See Debtor's Memorandum, at 4.[6]

Indeed, the trustee's justified concern that a forced sale of the debtor's home is the likely result, were her proposed reorganization plan approved, is further increased because the Montgomery County Tax Claim Bureau has also asserted a lien claim in this case, and the debtor offered no evidence as to her ability to address that secured claim.  Therefore, even if the debtor's plan had been more carefully written and did not provide for the secured claim of Bank One, it could not be approved.

The only outcome of the Bank One litigation that might not offend some provision of section 1322 or 1325 would be a settlement, by which Bank One retained a

---

[5]Allow unsecured claims are place in class 6 and are to be paid pro rata.  Ex. D-1.

[6]Generally, a chapter 13 debtor will not provide for a secured claim when the debtor is current with the creditor and intends simply to continue making payments according to the loan note, or intends to surrender the collateral.

16

lien in excess of the value of the realty, and would accept reduced monthly mortgage payments, with such payments made directly by the debtor to the creditor.[7] As a component of a settlement, the creditor might actively support confirmation of the proposed plan and agree not to seek to modify the bankruptcy stay. If I assume that the debtor's husband would continue earning $1,000 per week, and if the reduction in mortgage payments freed sufficient funds for the debtor to repay the Tax Claim Bureau, the debtor's proposed plan might then be feasible.

However, there is absolutely no evidence that Bank One will agree to modify its mortgage to accommodate the debtor's current financial limitations. In addition, in light of Mr. Oscar's testimony that he anticipated a reduction in his income unless he found another position, and in light of prior difficulties in finding employment—which difficulties are increased by his observed hearing loss—I am not persuaded by the evidence presented that the debtor could afford to repay Bank One even the $1,500 monthly figure she mentioned.

In sum, for the reasons just stated, the debtor has not met her burden of persuasion, over the objection of the chapter 13 trustee, to approve a plan calling for nominal monthly trustee payments and no mortgage or tax delinquency payments, while she litigates with her mortgage holder over the latter's liability under the Truth in Lending Act. This plan proposal may be dictated by her very difficult financial circumstances; however, based upon the facts adduced at the hearing, this reorganization proposal has

---

[7] The feasibility of this arrangement depends upon Mr. Oscar continuing to earn at least $4,000 per month and the accuracy of the debtor's estimate of what she could afford to pay that creditor.

17

not been proven to be feasible. It also upsets the delicate balance established by the various confirmation requirements found in section 1325.

Accordingly, confirmation shall be denied.[8] An appropriate order shall be entered.[9]

---

[8] Given this conclusion, I need not consider the trustee's additional objection to confirmation based upon section 1322(a)(1).

[9] As the trustee has not addressed his own motion to dismiss, I shall reschedule a hearing on that matter.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                             :    Chapter 13

CATHERINE A. OSCAR                :

    Debtor                :    Bankruptcy No. 04-18900F

..................................................

ORDER

..................................................

AND NOW, this 12th day of September 2005, for the reasons stated in the accompanying memorandum, it is hereby ordered that confirmation of the debtor's proposed chapter 13 plan, dated June 3, 2005, is denied.

It is further ordered that a hearing on the trustee's request to dismiss this case shall take place on September 27, 2005, at 4:00 P.M., in Bankruptcy Courtroom #2. Both parties shall be prepared to address the provisions of 11 U.S.C. § 1307(c)(5).

                                            _____
                                            BRUCE FOX
                               United States Bankruptcy Judge

copies to:

Mrs. Catherine A. Oscar
111 Clayton Court
North Wales, PA 19454

David A. Scholl, Esq.
Regional Bankruptcy Center of SE PA
Law Office of David A. Scholl
6 St Albans Avenue
Newtown Square, PA 19073

William C. Miller, Esq.
Chapter 13 Trustee
111 S. Independence Mall
Suite 583
Philadelphia, PA 19106